John M. Bray
Attorney ID No. TX0064 (DC)
THE LAW OFFICE OF JOHN M. BRAY, PLLC
911 N. Bishop Ave.
Dallas, TX 75208
Tel: (855) 566-2729
Fax: (214) 960-4164
john@jmblawfirm.com
*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | |
|---|---|
| JORGE ANTONIO GUERRA QUEZADA, <br><br> *Plaintiff*, <br><br> v. <br><br> UNITED STATES OF AMERICA, ALEJANDRO MAYORKAS, Secretary of Homeland Security, in his official capacity; TAE JOHNSON, Acting Director of U.S. Immigration and Customs Enforcement, in his official capacity; U.S. Immigration and Customs Enforcement Officer John Doe(s); and MERRICK GARLAND, U.S. Attorney General, in his official capacity, <br><br> *Defendants.* | CIVIL ACTION NO. 1:24-CV-00016 <br><br> **JURY TRIAL DEMANDED** <br><br> **PLAINTIFF'S ORIGINAL COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE AND DECLARATORY RELIEF** |

## I.    INTRODUCTION

1.    This matter concerns the United States government's failure to adequately investigate claims of U.S. Citizenship, as well as the consequences that such failure naturally entails for those who are wrongfully deported from this country.

2.    This action is brought under the Federal Tort Claims Act and the United States Constitution pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

3.    Plaintiff, who was wrongfully deported and detained by various executive branch agencies, hereby brings claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), to challenge his wrongful detention, eventual deportation, and exile to Mexico, as well as to remedy the harm he has suffered as a result of the harm he suffered due to the government's failure to investigate his lawful claim to United States Citizenship.

4.    Defendants stymied Plaintiff's efforts to seek recognition of his United States Citizenship due to years of needless bureaucratic inaction and errors that most recently resulted in Plaintiff's wrongful deportation to Mexico in September 2021.

5.    Plaintiff seeks an evidentiary hearing on the validity of his tort claims, a finding that the Department of Homeland Security and its sub-agency, U.S. Immigration and Customs Enforcement failed properly to investigate Plaintiff's claim to United States citizenship of the United States stemming from his family history as explained herein, and damages and other costs as provided by law.

## II.    JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over this action pursuant to the Federal Tort Claims Act ("FTCA"). 28 U.S.C. § 1346(b)(1) (United States as defendant). This Court also has jurisdiction under 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1651 (the All Writs Act); and 28 U.S.C. § 1361 (action to compel an officer of the United States to perform his duty).

7.    On or about May 27, 2023, an Administrative Tort Claim was submitted by Plaintiff's filing of a Form SF-95 to the Office of Principal Legal Advisor for the U.S. Department of Homeland Security ("DHS"). Several months later, DHS acknowledged having received Plaintiff's Form SF-95 on July 27, 2023. Later, Plaintiff amended his administrative claim on or about November 28, 2023, by emailing the appropriate division within DHS. Eventually, DHS denied Plaintiff's administrative claim on January 26, 2024.

8.    This Court has personal jurisdiction over this suit, because one or more Defendants' places of business is in this district, and part of the events giving rise to the claim occurred in this district.

9.    Venue also properly lies in this Court under 28 U.S.C. § 1391(b) and (e) because a substantial part of the events and omissions giving rise to the claim occurred and continue to occur in this district, and because one or more of Defendants' places of business is within this district. Plaintiff would submit that an actual controversy has arisen and now exists between Plaintiff and Defendants.

### III.    PARTIES

10.    Plaintiff, Jorge Antonio Guerra Quezada (hereinafter "Jorge Antonio" and "Plaintiff"), DOB: 02/15/1993, is a 32-year-old native of Mexico and a putative citizen of the United States who ordinarily resides in Arlington, Tarrant County, Texas.

11.    Defendant, Alejandro Mayorkas ("Defendant Mayorkas"), named only in his official capacity as Secretary of the Department of Homeland Security, leads the executive department responsible for the detention of alleged noncitizens during their removal proceedings, as well as for ensuring the presence of alleged noncitizens at these proceedings. In addition to detaining putative noncitizens, the Department of Homeland Security ("DHS"), is a

Cabinet department of the U.S. government that is also ultimately responsible for determining claims to United States citizenship, adjudicating applications for immigration and naturalization benefits, enforcing federal immigration laws, and ensuring border security.

12.    Defendant, United States of America, is the appropriate defendant under the Federal Tort Claims Act.

13.    Defendant, Tae Johnson ("Defendant Johnson"), named only in his official capacity as Acting Director of Immigration and Customs Enforcement ("ICE"), leads the DHS agency responsible for the detention of various alleged noncitizens during their removal proceedings, as well as for ensuring their removal from the United States following those proceedings. ICE is the administrative agency of DHS charged with enforcing the federal immigration laws, and it seeks to arrest, detain, and deport removable immigrants in the United States. As a component of DHS, ICE is headquartered in Washington, D.C.

14.    Defendant, Merrick Garland ("Defendant Garland"), named only in his official capacity as U.S. Attorney General, leads the executive department responsible for immigration removal proceedings, as he oversees the Department of Justice ("DOJ") and, in that capacity, oversees the Executive Office for Immigration Review ("EOIR"). DOJ is the chief law enforcement agency of the United States. DOJ is responsible for overseeing and making policy on behalf of the EOIR, which oversees immigration judges. DOJ's mission is to enforce and interpret the law, including the rights of immigrants and putative noncitizens. As a Cabinet department, DOJ is headquartered at 950 Pennsylvania Avenue, NW, Washington, D.C. 20530.

15.    Defendant John Doe(s) (hereinafter "Doe defendants") are and were at all times relevant to this Complaint officers employed by ICE, an agency of the United States of America, who were involved in Plaintiff's removal from the United States. The Doe defendants

are sued in their individual capacities under fictitious names because their true identities are unknown to Plaintiff at this time. When Plaintiff ascertains the identity of the Doe defendants, he will amend this Complaint accordingly.

16.    At all times relevant to this Complaint, the Doe Defendants were acting within the scope and course of their employment with ICE.

17.    At all times relevant to this Complaint, the Doe defendants were acting as investigative or law enforcement officers.

18.    At all times relevant to this Complaint, the Doe defendants acted in concert and conspiracy with other agents of various DHS and DOJ subagencies, and they were jointly and severally responsible for the harms caused to the Deportee Subclass members.

## IV.    STATEMENT OF THE FACTS

### Administrative Procedures for Review of Claimed Citizenship Status

19.    Whenever an individual in immigration removal proceedings claims to be a United States citizen, several things occur. Firstly, the immigration judge ("IJ") halts the removal proceedings while ICE counsel investigates the claim. This is because it is unconstitutional, under any circumstances, to deport a United States citizen. *See Trop v. Dulles*, 356 U.S. 86 (1957) (violates Eighth Amendment). Review of claimed status as a United States citizen takes precedence over other matters, as the issue of citizenship is jurisdictional in the context of removal proceedings. *See* INA § 239(a), 8 U.S.C. § 1229(a); *see also* Immigration Court Practice Manual § 7.1, available at: https://www.justice.gov/eoir/reference-materials/ic/chapter-7/1.

20.    Because establishing alienage is a prerequisite for an order of removal, the IJ has the authority and obligation to review the nationality of a subject in DHS custody, including those who claim United States citizenship. *See* INA § 239(a), 8 U.S.C. § 1229(a). However, the

IJ lacks jurisdiction to proceed in removal proceedings against any individual unless DHS has proven by clear and convincing evidence that alienage, *i.e.*, the individual is not a United States citizen. *See* 8 C.F.R. § 1240.8(c) (DHS "must first establish the alienage of the respondent"); *see also Nijhawan v. Holder*, 557 U.S. 29, 42 (2009) (DHS bears burden of proving removability of respondent by clear and convincing evidence).

21.     Secondly, DHS employees are supposed to conduct a thorough investigation as to the nature of the individual's claim of United States citizenship. ICE Policy Guidance 16001.2, Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE, *available    at:*   https://www.ice.gov/sites/default/files/documents/Document/2017/16001.2.pdf, attached hereto as Exhibit "N". If the individual claims United States citizenship through a family member, such as a parent or grandparent, then the DHS investigation will usually consist or researching the individual's family history, including whether the person through whom the individual claims citizenship was himself a citizen, as well as whether that individual meets certain physical presence requirements.

22.     Often, DHS employees conduct their investigation by corroborating various elements of the citizenship claim with historical records and civil documents pertaining to the family member through whom the individual has claimed United States citizenship, such as by reviewing birth certificates, baptismal certificates, and census records. *See* Ex. N.

23.     In the present case, Jorge Antonio claims to have acquired United States citizenship at birth through his father, Jorge Guerra Vazquez, who in turn acquired citizenship through his father, Antonio Guerra, who in turn acquired citizenship through his mother, Cruz Rodriguez de Guerra. Because of this, proof of Jorge Antonio's claim of "acquisition of

citizenship" through his father would have sufficed for purposes of justifying termination of his removal proceedings.

24.     Because an "acquisition of citizenship" claim depends upon the legal regime prevailing for the year in which the putative U.S. citizen was born, the first step in Jorge Antonio's case would have been to ascertain Jorge Antonio's most likely date of birth, as corroborated by his Mexican birth certificate. *See* Ex. A, Plaintiff's Birth Certificate.

25.     Jorge Antonio's Mexican birth certificate shows that he was born in Tamaulipas, Mexico on February 15, 1993. From this, it is apparent that the legal regime prevailing at that time was Section 301(g) of the Immigration and Nationality Act ("INA"). *See* Pub. L. No. 99-653, Pub. L. No. 100-525 (1986), *codified at* 8 U.S.C. § 1401(g). This statute provides that an individual acquires United States citizenship at birth, though his mother, if the mother: (i) was born or naturalized in the United States before the child's birth, and (ii) the mother was physically present in the United States for at least five years after attaining the age of 14 years.

26.     The second step in "acquisition of citizenship" cases involves tracing a putative citizen's lineage to a known United States citizen. In this case, that person was Jorge Antonio's great-grandmother, Cruz Rodriguez de Guerra.

27.     The next and final steps require ascertainment of the transmission of that person's United States citizenship to his or her children, grandchildren, and so on, until reaching the putative citizen in question, and mindful of the legal regime prevailing at the time of birth of each subsequent link in the chain of descendants.

28.     In the case of Jorge Antonio, DHS employees did not follow these steps. In other words, the Doe defendants, in collaboration with other agents of DHS, did not put forth the minimal effort required to even obtain a copy of the birth certificate of Jorge Antonio's

grandmother, nor did they make a good faith effort to attempt to corroborate Jorge Antonio's bona fide claim that he was a United States Citizen through his father, Jorge Guerra Vazquez.

**Background of Plaintiff's Family History and Basis of Citizenship Claim**

29.    Jorge Antonio was born on February 15, 1993, in Tamaulipas, Mexico, to Jorge Guerra Vazquez and Maria Guadalupe Quezada Arguijo. *See* Ex. A, Plaintiff's Birth Certificate. Jorge Antonio's parents were married at the time of his birth. *See* Ex. B, Marriage Certificate of Plaintiff's Parents. Plaintiff acquired United States citizenship at birth through his father, Jorge Guerra Vazquez.

30.    Jorge Antonio's father, Jorge Guerra Vazquez, was born on September 13, 1972, in Tamaulipas, Mexico, to Antonio Guerra and Paula Vazquez. Jorge Guerra Vazquez acquired United States citizenship at birth through his father, Antonio Guerra. *See* Ex. E, Proof of U.S. Citizenship for Plaintiff's Family.

31.    Jorge Antonio's grandfather, Antonio Guerra, was born on June 13, 1944, in Guanajuato, Mexico, to Benigno Guerra and Cruz Rodriguez de Guerra. In the same way, Antonio Guerra acquired United States citizenship at birth through his mother, Cruz Rodriguez de Guerra. *See* Ex. E, Proof of U.S. Citizenship for Plaintiff's Family.

32.    Jorge Antonio's great-grandmother, Cruz, was born on February 28, 1924, in Herington, Kansas. However, Cruz struggled for most of her life to get the United States government to acknowledge her citizenship.

33.    Cruz had three brothers who were also born in the United States. Cruz was very close with her older brother, Gabriel Rodriguez Bargas, but they lost touch once he began living in California, and Cruz was forced to stay behind in Mexico at that time.

34.     Cruz repeatedly tried to enter the United States as a citizen sometime in 1940 but could not do so, because an immigration officer on the border told Cruz that she had "abandoned her residence," despite her true status as a United States citizen.

35.     Regardless of the immigration officer's specious claim that Cruz had "abandoned her residence," Cruz's ties to the United States were more than superficial—her father, Teodoro Rodriguez, had registered in September 1918 to serve in World War I. When World War II broke out, Cruz's brothers answered this nation's call to arms and proudly served in the fight against fascism.[1] *See* Ex. E, Proof of U.S. Citizenship for Plaintiff's Family. Yet, all the while, Cruz's brothers served the United States in full knowledge that the United States government had refused to allow Cruz to enter the United States, and she was still not permitted even as they fought overseas to defend this country from her enemies abroad.

36.     Jorge Antonio was petitioned by his family and eventually admitted to the United States in the "F27" category upon presenting himself for inspection at the port of Hidalgo, Texas. *See* Ex. C, Notice to Appear. *See also* Ex. D, Permanent Resident Card.

37.     Since that time, Plaintiff resided continuously in Texas until June 2021, when he was placed into removal proceedings. *See* Ex. C, Notice to Appear.

## Summary of Plaintiff's Immigration Court Proceedings

38.     On June 11, 2021, DHS placed Jorge Antonio into removal proceedings before the Dallas Immigration Court. *See* Ex, C, Notice to Appear.

39.     While in removal proceedings, Plaintiff's immigration counsel sought to apprise EOIR and DHS of the likelihood that Jorge Antonio had a viable claim to acquisition of

---

[1] Also, Cruz's mother, Eleuteria Bargas, was buried in Herington, Kansas, so the immigration officer's refusal to allow Cruz to enter the United States in 1940 also meant Cruz was unable to visit her mother's grave.

citizenship by filing a Motion to Terminate on August 26, 2021. *See* Ex. F, Motion to Terminate or Dismiss Proceedings.

40.    Eventually, Jorge Antonio was deported to Mexico at the conclusion of his removal proceedings, following the issuance of an order of removal by Immigration Judge Shelly W. Schools (the "IJ") of the Dallas Immigration Court on September 15, 2021. *See* Ex. G, Order of Removal.

41.    In the aforementioned order of removal, the IJ necessarily had to determine that Jorge Antonio was not a citizen of the United States. Furthermore, the IJ also ordered Jose Antonio's Lawful Permanent Residence to be rescinded. *See* Ex. C, Notice to Appear. *See also* Ex. G, Order of Removal.

42.    In asserting Jorge Antonio's alienage, it was required to ascertain, in the first place, whether there was any possibility that Jorge Antonio was a U.S. citizen. Despite alleging Jorge Antonio was not a U.S. citizen, his "A" file is replete with claims to U.S. citizenship.

43.    Indeed, during the pendency of Plaintiff's removal proceedings, Plaintiff's immigration counsel alerted both ICE and the IJ that he had a valid claim to have acquired United States citizenship, either at birth in 1993, or at the time of his admission as a permanent resident in 2005, pursuant to the Child Citizenship Act of 2000, Pub. L. No. 106-395 (2000). On this basis, Plaintiff's immigration counsel even filed a motion to terminate, but the IJ willfully failed even to consider the merits of this motion.

44.    On August 19, 2021, while Plaintiff was still in DHS custody pending the outcome of his removal proceedings, Plaintiff's father, Jorge Guerra Vazquez, sought a certificate of citizenship by filing a Form N-600 application with U.S. Citizenship & Immigration Service ("USCIS") with the assistance of counsel. *See* Ex. I, Receipt Notice for N-600 of Plaintiff's

Father. To be clear, Plaintiff's immigration counsel notified ICE and the IJ that Plaintiff's father had filed a Form N-600 with USCIS soon after it was filed.

45.       After just four months of administrative processing, USCIS ultimately granted the Form N-600 filed by Plaintiff's father on or about November 9, 2021, and Plaintiff's father attended an oath ceremony on December 2, 2021. *See* Ex. J, Notice of Approval of N-600 of Plaintiff's Father.

46.       On December 3, 2021, Plaintiff, through counsel, filed a Form N-600 with USCIS through the agency's online web portal in order to obtain his own certificate of citizenship, despite his deportation to Mexico a month and a half earlier on or about October 15, 2021. *See* Ex. L, Plaintiff's N-600 e-filing and Receipt Notices.

47.       On December 22, 2021, the Dallas Field Office of USCIS issued a Notice of Intent to Cancel the Certificate of Citizenship issued for Plaintiff's father, which apparently sought to rescind the agency's recognition of his United States citizenship. *See* Ex. K, Notice to Rescind Approval of N-600 of Plaintiff's Father.

48.       Despite this history, the Dallas Field Office of USCIS ultimately granted Jorge Antonio a Certificate of Citizenship on August 30, 2023, stating that he became a citizen of the Unites States on February 23, 2005. *See* Ex. M, Plaintiff's Certificate of Citizenship.

49.       The foregoing procedural history makes it abundantly clear that Defendants deported Jorge Antonio to Mexico, even though he raised a valid and easily traceable claim to United States citizenship. Indeed, the fact that USCIS—ICE's sister agency under the wider umbrella of DHS—ultimately granted Jorge Antonio's N-600.

50.       The validity of USCIS's grant of Jorge Antonio's N-600 is further bolstered by the fact that CBP—yet another DHS agency—ultimately permitted Jorge Antonio to re-enter the

United States in December 2021, even following his deportation to Mexico just two months earlier, in October 2021, pursuant to the removal order entered by the IJ in September 2021.

51.     As a result of Defendants' actions, Jorge Antonio was unlawfully detained, unlawfully deported, and separated from his family in the United States for approximately three months, causing him to suffer serious injuries. Plaintiff was prevented from engaging in full-time employment in the United States causing him to suffer substantial financial loss, as well as the mental suffering and distress he suffered at the prospect of permanent exile to a foreign country.

52.     Indeed, in the days after Jorge Antonio's deportation, he was forced to live in exile in Mexico for approximately three months, separated from his family and the only country he ever knew.

53.     Eventually, Plaintiff's immigration counsel was able to persuade agents of the U.S. Customs and Border Protection to permit Jorge Antonio to re-enter the United States at the port of entry in Brownsville, Texas, where Jorge Antonio was inspected by an immigration officer and essentially paroled into the United States. *See* Ex. H, Correspondence addressed to CBP.

54.     Considering the foregoing, Plaintiff seeks compensation for the personal injuries that he has suffered to his reputation as a natural and foreseeable consequence of having to live life as a wrongfully deported "alien," which are a natural and foreseeable consequence of his false imprisonment, false arrest, abuse of process, and wrongful ejection caused by Defendants.

55.     Alternatively, Plaintiff alleges that his injuries were the natural and foreseeable consequence of the negligence of various agents and employees of DOJ, DHS, and ICE.

56.     At the time of filing of this action, Plaintiff is an individual with net worth not exceeding Two Million and No/100 Dollars ($2,000,000.00).

## V. CAUSES OF ACTION

### General Mechanics of the Federal Tort Claims Act

57.    With certain exceptions, a plaintiff may not commence an FTCA action against the federal government until exhausting his administrative remedies, which encourages the federal agency whose activities gave rise to the injury to conduct its own investigation and to settle tort claims prior to litigation. *See* 28 U.S.C. § 2675(a); *see also Lopez v. United States*, 823 F.3d 970, 976 (10th Cir. 2016).

58.    The Plaintiff exhausts his administrative remedies with the federal agency by submitting a written notification, called a Standard Form 95 ("SF-95"), which "sufficiently describes the injury to enable the agency to begin its own investigation." *See* 28 C.F.R. § 14.2.

59.    Generally, the plaintiff must submit his SF-95 claim form within two years of the date of his injury, or his claim will be barred. *Douglas v. United States*, 814 F.3d 1268, 1279 (11th Cir. 2016) (affirming dismissal of FTCA claims that plaintiff had "failed to fully exhaust"). However, this two-year statute of limitations may be equitably tolled, such as "where the claimant has actively pursued his judicial remedies by filing a defective pleading" within the two-year timeframe, or where he "has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *See Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96 (1990); *see also Perez v. United States*, 167 F.3d 913, 917 (5th Cir. 1999) (equitably tolling FTCA's statute of limitations where plaintiff exercised due diligence).

60.    Although the FTCA is a matter of federal law, courts must look to state law for the substantive elements of the tort claim. 28 U.S. C. § 2674. *See Pleasant v. U.S. ex rel. Overton Brooks Veterans Admin. Hosp.*, 764 F.3d 445, 448 (5th Cir. 2014).

61.    Defendants' actions against Plaintiff are actionable under the "law enforcement proviso" of the Federal Tort Claims Act, which renders the United States liable for certain

intentional torts, including false arrest, wrongful imprisonment, and abuse of process, committed by federal investigative or law enforcement officers. 28 U.S.C. § 2680(h).

62.     Courts have routinely held that the actions of DHS agents qualify may subject the United States to liability, as DHS agents can "execute searches," "seize evidence," and "make arrests for violations of federal law." *See Campos v. United States*, 888 F.3d 724, 737 (5th Cir. 2018) (liability found based on actions Customs and Border Protection officers), *cert. denied*, 139 S. Ct. 1317 (2019).

## COUNT I
### Declaration of Plaintiff's United States Citizenship

63.     Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-56 above.

64.     Plaintiff requests that the Court issue a declaratory judgment formally recognizing Plaintiff as a United States Citizen for all purposes. Prior to filing suit in this case, DHS's sub-agency, USCIS, issued a notice to Plaintiff's father, Jorge Guerra Vazquez, in an effort to rescind the agency's certificate recognizing him as a citizen of the United States. *See* Ex. K, Notice of Seeking to Rescind N-600 Approval of Plaintiff's Father.

65.     Because DHS, through its sub-agency USCIS, erroneously and unlawfully attempted to rescind a formal acknowledgment that Plaintiff's father is a United States Citizen, Plaintiff is entitled to a formal declaration by the Court to cast aside any doubt as to Plaintiff's citizenship for all purposes henceforth.

66.     Although Plaintiff currently has a certificate of United States Citizenship issued by USCIS, he fears he will suffer injury as a result of Defendant's future refusal to acknowledge his status as a United States Citizen, for which Plaintiff is entitled to declaratory relief to avoid future injury.

67.     Accordingly, Defendant has adversely affected and aggrieved Plaintiff rights under 8 U.S.C. § 1401 (rights of those who acquire United States Citizenship at birth), for which relief is provided under 8 U.S.C. § 1447(b) (All Writs Act).

## COUNT II
### Petition for Writ of Injunction

68.     Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-56 above.

69.     Plaintiff requests that the Court issue a permanent injunction, enjoining Defendants from further refusing to acknowledge Plaintiff's United States Citizenship going forward. Indeed, prior to filing suit in this case, DHS's sub-agency, USCIS, issued a notice to Plaintiff's father, Jorge Guerra Vazquez, in an effort to rescind the agency's certificate recognizing him as a citizen of the United States. *See* Ex. K, Notice Seeking to Rescind N-600 Approval of Plaintiff's Father.

70.     Under the APA, courts must "hold unlawful and set aside" agency action that is "not in accordance with law," "contrary to constitutional right," in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or that is "without observance of procedure required by law." 5 U.S.C. § 706(2)(A)-(D).

71.     In the event that Defendants attempt to rescind the notice of approval of Plaintiff's Form N-600 application, it would clearly run "contrary to constitutional right," as it would amount to a violation of Plaintiff's right to Due Process under the Fourteenth Amendment by depriving Plaintiff of his rights as a United States Citizen. *Cf id.*

72.     Although Plaintiff currently has a certificate of United States Citizenship, he fears he will suffer injury as a result of Defendant's future refusal to acknowledge his status as a United States Citizen, and Plaintiff is entitled to injunctive relief to avoid future injury.

## COUNT III
### Federal Tort Claims Act – Negligence

73.     Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-56 above.

74.     The federal officers referenced above had a duty to Jorge Antonio to act with ordinary care and prudence so as not to cause him harm or injury. Specifically, the Doe defendants owed a duty to Jorge Antonio not to arrest, detain, and deport him in violation of federal law, and not to prevent his return to the United States in violation of the law.

75.     The Doe defendants' actions directly and foreseeably resulted in Jorge Antonio's wrongful deportation from the United States, his wrongful separation from his family, and prevented him from returning to the United States. As such, the Doe defendants breached their duty to Plaintiff, and the Doe defendants' actions were a direct and proximate cause and a substantial factor in bringing about the damages outlined above.

76.     The actions of the Doe defendants constitute the tort of negligence under the laws of the State of Texas. Therefore, Defendants are liable to Plaintiff for negligence under the Federal Tort Claims Act.

## COUNT IV
### Federal Tort Claims Act – Gross Negligence

77.     Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-56 above.

78.     The federal officers referenced above had a duty to Jorge Antonio to act with ordinary care and prudence so as not to cause him harm or injury. Specifically, the Doe defendants owed a duty to Jorge Antonio not to arrest, detain, and deport him in violation of federal law, and not to prevent his return to the United States in violation of the law.

79.    Under Texas law, the two elements of gross negligence are: 1) viewed objectively from the standpoint of the actor, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and 2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001) (citing *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex. 1994)); *see* Tex. Civ. Prac. & Rem. Code § 41.001(11).

80.    The Doe defendants' actions directly and foreseeably resulted in Jorge Antonio's wrongful deportation from the United States, his wrongful separation from his family, and prevented him from returning to the United States. The Doe defendants were also consciously aware of the risk that Plaintiff was possibly a United States citizen, based in part on the fact that Plaintiff's immigration counsel had sought to terminate his removal proceedings, as well as based on the fact that Plaintiff's father had filed a Form N-600 application for a certificate of citizenship on or about August 19, 2021, the approval of which would remove virtually all doubt about the validity of Plaintiff's claim to United States citizenship.

81.    Nonetheless, before USCIS had the chance to approve the N-600 of Plaintiff's father—which USCIS ultimately *did* approve on or about December 2, 2021—the Doe defendants consciously disregarded that risk that Plaintiff was a United States citizen and proceeded in deporting Plaintiff to Mexico, indifferent to Plaintiff's rights as a likely United States citizen. As such, the Doe defendants breached their duty to Plaintiff, and the Doe defendants' actions were a direct and proximate cause and a substantial factor in bringing about the damages outlined above.

82.     The actions of the Doe defendants constitute the tort of gross negligence under the laws of the State of Texas. Therefore, Defendants are liable to Plaintiff for gross negligence under the Federal Tort Claims Act.

**COUNT V**
**Federal Tort Claims Act – False Arrest**

83.     Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-56 above.

84.     Generally, the elements of a claim for false arrest are: (1) defendant's willful detention of plaintiff; (2) against the consent of the plaintiff; and (3) the arrest was without justification. *Cf. San Antonio v. Dunn*, 796 S.W.2d 258, 262-63 (Tex.App.—San Antonio 1990) (no pet.) (noting that trial court "did not define justification" but that this term "is not a legal expression whose meaning is unknown to laymen").

85.     Jorge Antonio can successfully establish false arrest, because federal law enforcement agents of DHS acted unlawfully in intentionally arresting Jorge Antonio on or about June 11, 2021, and Plaintiff did not consent to his arrest or detention. Additionally, Plaintiff's confinement by federal agents was not authorized by law, since Plaintiff was a United States Citizen, a fact which is abundantly clear now that DHS's sub-agency, U.S. Citizenship & Immigration Services, has issued Plaintiff a certificate of citizenship.

86.     Additionally, Defendants' actions amount to a violation of Plaintiff's right to be free of unreasonable search and seizure under the Fourth Amendment to the United States Constitution, as this false arrest was conducted without legal justification, and it led to Plaintiff's lengthy detention in ICE custody before Plaintiff was deported in October 2021, until his eventual re-entry to the United States on December 14, 2021.

87.     Defendants' actions against Plaintiff are actionable under the "law enforcement proviso" of the Federal Tort Claims Act, which renders the United States liable for certain intentional torts, including false arrest, committed by federal investigative or law enforcement officers. 28 U.S.C. § 2680(h). Courts have routinely held that the actions of DHS agents qualify may subject the United States to liability, as DHS agents can "execute searches," "seize evidence," and "make arrests for violations of federal law." *See Campos v. United States*, 888 F.3d 724, 737 (5th Cir. 2018) (liability found based on actions Customs and Border Protection officers), *cert. denied*, 139 S. Ct. 1317 (2019).

88.     The actions of the Doe defendants constitute the tort of false arrest under the laws of the State of Texas. Therefore, Defendants are liable to Plaintiff for false arrest under the Federal Tort Claims Act.

## COUNT VI
## Federal Tort Claims Act – Wrongful Imprisonment

89.     Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-56 above.

90.     The elements of a false arrest claim in Texas are: (1) willful detention; (2) without consent; and (3) without authority of law. *See Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002); *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex. 1985).

91.     Jorge Antonio can successfully establish wrongful imprisonment, because federal law enforcement agents of DHS likewise acted unlawfully in willfully detaining Jorge Antonio without his consent and without lawful authority, thus preventing him from residing at liberty in the United States for a period of 186 days, from the time of his arret on or about June 11, 2021, until his eventual re-entry on December 14, 2021.

92.    Defendants' actions against Plaintiff are actionable under the "law enforcement proviso" of the Federal Tort Claims Act, which renders the United States liable for certain intentional torts, including wrongful imprisonment, committed by federal investigative or law enforcement officers. 28 U.S.C. § 2680(h). Courts have routinely held that the actions of DHS agents qualify may subject the United States to liability, as DHS agents can "execute searches," "seize evidence," and "make arrests for violations of federal law." *See Campos v. United States*, 888 F.3d 724, 737 (5th Cir. 2018) (liability found based on actions Customs and Border Protection officers), *cert. denied*, 139 S. Ct. 1317 (2019).

93.    The actions of the Doe defendants constitute the tort of wrongful imprisonment under the laws of the State of Texas. Therefore, Defendants are liable to Plaintiff for wrongful imprisonment under the Federal Tort Claims Act.

## COUNT VII
### Federal Constitutional Claim – Violation of Substantive Due Process

94.    Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-56 above.

95.    The Doe defendants' forcible and unlawful deportation of Plaintiff from the United States and actions to prevent Plaintiff from returning to the United States, in clear violation of the mandatory stay of Plaintiff's deportation, was conscience shocking and/or deliberately indifferent to Plaintiff's rights, and as such, violated Plaintiff's rights to substantive due process of law under the Fifth Amendment to the United States Constitution.

## COUNT VIII
### Federal Constitutional Claim – Violation of Procedural Due Process

96.    Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-56 above.

97.    The Doe defendants' actions in deporting Plaintiff and in preventing Plaintiff from returning to the United States in violation of the statute and regulations governing the conduct of ICE violated Plaintiff's rights to procedural due process of law as guaranteed by the Fifth Amendment to the United States Constitution.

98.    The Doe defendants' actions in deporting Plaintiff deprived Plaintiff of his liberty and did so without providing Plaintiff with adequate procedural protections, including an opportunity to be heard before an *impartial* arbiter to properly assert that his deportation or removal was legally barred, and therefore violated Plaintiff's rights to procedural due process of law as guaranteed by the Fifth Amendment to the United States Constitution.

### COUNT IX
### Federal Tort Claims Act – Intentional Infliction of Emotional Distress

99.    Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-56 above.

100.    Generally, Texas law recognizes intentional infliction of emotional distress where: "(1) the defendant acted intentionally or recklessly, (2) the conduct was 'extreme and outrageous,' (3) the actions of the defendant caused the plaintiff emotional distress, and (4) the resulting emotional distress was severe." *See Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998); *see also Truman v. United States*, 26 F.3d 592, 595 (5th Cir. 1994) (finding that Plaintiff's IIED claim was "not excluded from the reach of the FTCA"); *Jane W. v. President & Directors of Georgetown Coll.*, 863 A.2d 821, 826–27 (D.C. 2004) (recognizing validity of related tort for negligent infliction of emotional distress but dismissing where plaintiff could not show additional underlying tort or that she either was in "zone of physical danger").

101.    Jorge Antonio can successfully establish intentional infliction of emotional distress, as federal agents acted recklessly in detaining Jorge Antonio at the Prairieland Detention Center in

Fort Worth, Texas for 3 months prior to his removal. Federal agents likewise acted recklessly in detaining or preventing Jorge Antonio from residing in the United States for a period of 186 days until his eventual re-entry on December 14, 2021. On account of this unlawful detention and removal, Jorge Antonio suffered severe emotional distress including, but not limited to, his forceful separation from his family.

102.    Jorge Antonio has suffered severe emotional distress as the natural and foreseeable consequence of having been wrongfully detained and deported from the United States, despite his true status as a United States Citizen. Effectively, Defendants' repeated failure to recognize Jorge Antonio as United States Citizens forced him to live the life of an undocumented immigrant for several months. *See Underwood v. Washington Post Employees Fed. Credit Union*, No. 88-CA-10060, 1992 WL 358838 (D.C. Super. June 19, 1992), *affirmed in relevant part*, *sub nom*, *Estate of Underwood v. Nat'l Credit Union Admin.*, 665 A.2d 621 (D.C. 1995) (upholding verdict in light of sufficient evidence of intentional, severe emotional distress exacerbating plaintiff's health issues).

103.    Defendants' actions against Plaintiff are actionable under the "law enforcement proviso" of the Federal Tort Claims Act, which renders the United States liable for certain intentional torts committed by federal investigative or law enforcement officers. 28 U.S.C. § 2680(h). Courts have routinely held that the actions of DHS agents qualify may subject the United States to liability, as DHS agents can "execute searches," "seize evidence," and "make arrests for violations of federal law." *See Campos v. United States*, 888 F.3d 724, 737 (5th Cir. 2018) (liability found based on actions Customs and Border Protection officers), *cert. denied*, 139 S. Ct. 1317 (2019).

104.    The actions of the Doe defendants constitute the tort of intentional infliction of emotional distress under the laws of the State of Texas. Therefore, Defendants are liable to Plaintiff for intentional infliction of emotional distress under the Federal Tort Claims Act.

**COUNT X**
**Federal Tort Claims Act – Malicious Abuse of Process**

105.    Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-56 above.

106.    Generally, in order to assert a claim of abuse of process under Texas law, a plaintiff must show the following: (1) the defendant made an illegal, improper, or perverted use of the process, a use neither warranted nor authorized by the process, (2) the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of the process; and (3) damage resulted to the plaintiff as a result of such illegal act. *See A.F.P. v. United States*, No. 1:21-cv-00780-DAD-EPG, 2022 U.S. Dist. LEXIS 122794, at *29-30 (E.D. Cal. July 11, 2022) (applying Texas law and finding a private analog in "abuse of process" where defendants "maliciously used plaintiff A.F.P's prosecution for illegal entry as a pretext for separating [Plaintiff] from his minor son").

107.    Jorge Antonio can establish abuse of process here, since federal agents of DOJ and DHS illegally and improperly removed him from the United States, on the basis of racial, ethnic, and/or discrimination, resulting in severe injuries as alleged and referred to hereinabove.

108.    The actions of the Doe defendants constitute the tort of abuse of process under the laws of the State of Texas. Therefore, Defendants are liable to Plaintiff for abuse of process under the Federal Tort Claims Act.

## VI.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment for the Plaintiff and grant the following relief:

a)  Issue a declaratory judgment, recognizing that Plaintiff is a United States citizen by virtue of the birth of his paternal lineage in the United States;

b)  Schedule a hearing on a permanent injunction hearing for the purpose of enjoining Defendants from denying Plaintiff's United States citizenship and from again arresting or deporting Plaintiff on the basis of his perceived alienage;

c)  Following the permanent injunction hearing, enter findings of fact and conclusions of law that: (1) Defendants' failure properly to investigate Plaintiff's claimed status of United States citizenship was legally erroneous and not substantially justified; (2) Plaintiff is a United States citizen; and (3) Defendant has wrongfully deported Plaintiff from the United States;

d)  Order Defendants to prepare and forward to the Court a certificate of United States citizenship in accordance with 8 U.S.C. § 1452(a);

e)  Award Plaintiff compensatory damages as to all Defendants;

f)  Award Plaintiff punitive damages as to all Defendants;

g)  Order Defendant to compensate Plaintiff for his reasonable costs and expenses related to the filing of this suit pursuant to, among other provisions, the Equal Access to Justice Act, 24 U.S.C. § 2412; and

h)  Grant Plaintiff such other and further relief to which he may appear to be entitled at law or in equity.

DATE: February 16, 2024.

Respectfully submitted,

THE LAW OFFICE OF JOHN M. BRAY, PLLC
911 N. Bishop Ave.
Dallas, Texas 75208
Tel: (855) 566-2729
Fax: (214) 960-4164
Email: john@jmblawfirm.com


By:    */s/  John M. Bray*
John M. Bray
Texas Bar No. 24081360
ATTORNEY FOR PLAINTIFF


     I hereby certify that, to the best of my knowledge and believe, the matter in controversy is not the subject of any other court, arbitration, or administrative proceeding.


    */s/  John M. Bray*
John M. Bray