IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JORGE ANTONIO GUERRA QUEZADA, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:24-CV-564-L (BK) |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| ET AL., | § | |
| DEFENDANTS. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and the district judge's *Order of Reference*, Doc. 12,

*Defendants' Motion to Dismiss*, Doc. 10, is before the undersigned United States magistrate

judge for findings and a recommended disposition. As detailed herein, Defendants' motion

should be **GRANTED**.

## I. BACKGROUND

### A. Factual Background

Plaintiff alleges that Defendants United States of America; Alejandro Mayorkas, Former

Secretary of Homeland Security; Tae Johnson, Acting Director of U.S. Immigration and Customs

Enforcement ("ICE"); Merrick Garland, Former U.S. Attorney General; and ICE Officer John

Doe(s), in their various official capacities (collectively, "Defendants") wrongfully detained and

deported him from the United States and improperly failed to consider Plaintiff Jorge Antonio

Guerra Quezada's claims to U.S. citizenship during removal proceedings.

Plaintiff was born in Tamaulipas, Mexico on February 15, 1993, and his birth certificate

states that he is a Mexican national. Doc. 1-2. In February 2005, he was admitted to the United

States at Harlingen, Texas as a lawful permanent resident with F27 status. Doc. 1-4 at 1; Doc. 1-5. On January 12, 2021, Plaintiff was convicted in the 363rd Judicial District Court of Dallas County, Texas, of Online Solicitation of Minor Sexual Conduct, in violation of § 33.021(c) of the Texas Penal Code. Doc. 1-4 at 1; Doc. 1-8 at 2. Based on that conviction, the Department of Homeland Security ("DHS") initiated removal proceedings against Plaintiff under § 237(a)(2)(E)(i) of the Immigration and Nationality Act ("INA") by issuing a Notice to Appear ("NTA"). Doc. 1-4 at 1; Doc. 1-8 at 2; 8 U.S.C. § 1227. Until Plaintiff was detained by ICE on June 10, 2021, pursuant to the NTA, Plaintiff resided continuously in Texas. Doc. 1 at 9; Doc. 1-4 at 1; Doc. 1-8 at 2. On June 11, 2021, Plaintiff was ordered to appear before an immigration judge ("IJ") in Dallas on July 12, 2021. Doc. 1-4 at 1; 8 U.S.C. § 1227.

At a hearing in July 2021, Plaintiff admitted the allegations in the NTA but denied that he was removable. Doc. 1-8 at 3. At a subsequent hearing on July 15, 2021, however, he withdrew his denial and conceded removability § 237(a)(2)(E)(i) of the INA. Doc. 1-8 at 3.

During the pendency of the removal proceedings, Plaintiff's counsel filed a Motion to Terminate on August 26, 2021, seeking to apprise the Executive Office for Immigration Review ("EOIR") and DHS of Plaintiff's alleged claim of citizenship, which he purportedly acquired either at birth in 1993 or upon admission as a permanent resident to the United States in 2005. Doc. 1 at 9-10; Doc. 10 at 9-12; *see generally* Doc. 1-7. After the motion was fully briefed, the immigration court held a hearing on September 2, 2021, eventually denying the motion upon finding that Plaintiff "did not meet his burden of proof to overcome the presumption of alienage in light of his birth in Mexico." Doc. 1-8 at 3. On September 15, 2021, Plaintiff was ordered removed by the IJ. Doc. 1 at 10; Doc. 1-8 at 13-18. Plaintiff was deported to Mexico the following month. Doc. 1 at 10-11; Doc. 1-8 at 13-18.

Plaintiff's claim that he is a U.S. citizen is disputed by Defendants. Doc. 1 at 9-10; Doc. 10 at 11-12. On August 19, 2021, while removal proceedings were pending and was in DHS custody, Plaintiff's father, Jorge Guerra Vasquez, filed a Form N-600 application with USCIS, seeking a Certificate of Citizenship which was granted in November 2021. Doc. 1 at 10-11; Doc. 1-6 at 41; Doc. 1-10. On December 3, 2021, Plaintiff filed the same form seeking his own Certificate of Citizenship. Doc. 1 at 11; Doc. 1-13. The same month, Customs and Border Patrol permitted Plaintiff to re-enter the United States in Brownsville, Texas. Doc. 1 at 12; Doc. 1-9. On December 22, 2021, USCIS issued a Notice of Intent to Cancel Jorge Guerra Vasquez's Certificate of Citizenship, after finding that it had been issued in error. Doc. 1 at 11; Doc. 1-12. Despite this, USCIS granted a Certificate of Citizenship to Plaintiff in August 2023. Doc. 1 at 11; Doc. 1-14.

   B.  *Procedural History*

In June 2024, Plaintiff sued Defendants seeking monetary, declaratory, injunctive, and mandamus relief, bringing ten claims with causes of action arising under, *inter alia*, (1) the Federal Tort Claims Act ("FTCA"); (2) the All Writs Act; (3) and the Mandamus Act. Doc. 1 at 2-3, 13-24; 28 U.S.C. §§ 1346, 1651, 1361. Plaintiff asserts that Defendants wrongfully detained and deported him from the United States. Doc. 1 at 2. Plaintiff also avers that Defendants failed to properly investigate his alleged U.S. citizenship, which he claims to have acquired at birth in 1993 through his paternal great-grandmother or, alternatively, when he was admitted as a lawful permanent resident in 2005. Doc. 1 at 2. Specifically, Plaintiff's FTCA claims are for negligence (including negligent deportation and family separation), gross negligence, false arrest, and wrongful imprisonment. Doc. 1 at 14-20. Plaintiff also appears to allege two FTCA causes of action for intentional infliction of emotional distress and malicious abuse of process

and two constitutional violations of his Fifth Amendment substantive due process and procedural

due process rights against the John Doe ICE Officers.  Doc. 1 at 20-23.  Plaintiff's requested

relief includes an evidentiary hearing on the validity of his tort claims, a permanent injunction

enjoining Defendants from further refusing to acknowledge Plaintiff's alleged U.S. citizenship,

and $66.4 million in damages.  Doc. 1 at 1-2.

Defendants now move to dismiss all claims against it based on a lack of subject matter

jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  *See generally* Doc. 10.  Plaintiff

timely responded to Defendants' motion to dismiss on June 5, 2024.  Doc. 16.  Defendants filed a

reply on June 18, 2024, Doc. 17, and Plaintiff filed a sur-reply on August 8, 2024, Doc. 18.  On

October 22, 2024, the Court granted Defendants' motion to strike Plaintiff's sur-reply, Doc. 19,

and denied Plaintiff's motion for leave to file the sur-reply, Doc. 20.  Doc. 22.  On October 23,

2024, upon review of Plaintiff's motion for leave to file the sur-reply, Doc. 20, the Court found

that further information on the impact of the Supreme Court's holding in *Loper Bright*

*Enterprises v. Raimondo* was warranted and ordered the parties to file supplemental briefs.  Doc.

23; *see* 144 S. Ct. 2244 (2024) (holding that courts may not defer to an administrative agency's

legal interpretation simply because the law is ambiguous).  The parties did so, *see* Doc. 24 &

Doc. 25, and *Defendants' Motion to Dismiss*, Doc. 10, is now ripe for adjudication.

## II.  APPLICABLE LAW

A motion to dismiss under Rule 12(b)(1) challenges a federal court's subject matter

jurisdiction.  FED. R. CIV. P. 12(b)(1).  "A case is properly dismissed for lack of subject matter

jurisdiction when the court lacks the statutory or constitutional power to adjudicate [it]."  *Home*

*Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation

omitted).  The party asserting that jurisdiction exists bears the burden of proof.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted).

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001) (citation omitted).  If a plaintiff fails to meet his burden, a court may dismiss a claim for lack of subject matter jurisdiction based on the complaint alone.  *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).  A complaint must be dismissed if it lacks subject matter jurisdiction.  *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012).  "Subject-matter jurisdiction can never be waived or forfeited. . . .  [A] valid objection may lead a court midway through briefing to dismiss a complaint in its entirety." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).

Because Defendants are alleging that 8 U.S.C. § 1252(g) strips this Court of jurisdiction, they must "overcome . . . the strong presumption in favor of judicial review of administrative action." *INS v. St. Cyr*, 533 U.S. 289, 298 (2001) (citations omitted).  Thus, "only upon a showing of clear and convincing evidence of a contrary legislative intent should the courts restrict access to judicial review." *Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 44 (1991) (cleaned up) (citation omitted).  However, the Court also must be mindful of the general rule that courts should refrain from interfering with matters of immigration and national security.  *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) ("[J]udicial deference to the Executive Branch is especially appropriate in the immigration context where officials

exercise especially sensitive political functions that implicate questions of foreign relations.")
(cleaned up) (citation omitted).

## III. ANALYSIS

Defendants seeks dismissal of Plaintiff's claims for lack of subject matter jurisdiction under the jurisdiction-stripping provision of 8 U.S.C. § 1252(g).[1] Doc. 10 at 8-16, 24-28. Plaintiff maintains that, because he is a U.S. citizen, § 1252(g) does not apply to him and, thus, does not strip this Court of subject matter jurisdiction. Doc. 16 at 7-10.

In pertinent part, 8 U.S.C. § 1252 provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of *any alien* arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against *any alien* under this chapter." § 1252(g) (emphasis added). The plain language of § 1252(g) clearly indicates that the statute deprives federal courts of jurisdiction over causes of action brought by aliens. As such, the Court's analysis in the instant case is mainly two-part: (1) whether Plaintiff is an alien; and (2) if so, whether all of Plaintiff's claims arise from the actions of the Attorney General seeking the removal of Plaintiff from the United States.

### A. Plaintiff Is an Alien.

Defendants dispute Plaintiff's claim that he is a U.S. citizen. Doc. 1 at 9-10; Doc. 10 at 11-12. As such, this Court can only determine whether it has subject matter jurisdiction by first

---

[1] Defendants also move to dismiss Plaintiff's claims for lack of subject matter jurisdiction under various provisions of the FTCA, including the discretionary-function exception and the intentional-tort exception. Doc. 10 at 16-24; 28 U.S.C. §§ 1346(b)(1), 2679(b)(1). Because Plaintiffs' claims—including FTCA and non-FTCA causes of action—should be dismissed for lack of subject matter jurisdiction under 8 U.S.C. § 1252(g), the Court pretermits discussion of the dismissal of the case *sub judice* pursuant to the FTCA.

resolving the question of whether Plaintiff is a United States citizen or an alien. *Iracheta*, 730 F.3d at 422.

Plaintiff first asserted his claim to citizenship while his removal proceedings were ongoing in August 2021, contending that he acquired derivative citizenship either at birth in 1993 through his American-born great-grandmother or upon admission as a permanent resident to the United States in 2005. Doc. 1 at 9-10; Doc. 10 at 9-12; Doc. 1-7. On December 3, 2021, Plaintiff filed a Form N-600 and was eventually granted a Certificate of Citizenship in August 2023. Doc. 1 at 11; Doc. 1-13; Doc. 1-14. Defendants assert that because Plaintiff's Certificate of Citizenship was granted in error (though no Notice of Intent to Cancel Plaintiff's certificate has been issued), Plaintiff is not a citizen. Doc. 10 at 12, nn.3-4; Doc. 1-15. Still, Plaintiff steadfastly maintains his assertion that he is a U.S. citizen. Doc. 16 at 6-10. The Court disagrees with Plaintiff.

"[T]he statute in effect at the time of [Plaintiff's] birth" governs whether he is a citizen. *Iracheta*, 730 F.3d at 423. It is undisputed that Plaintiff was born in 1993 outside of the United States. Doc. 1-2 at 1-2. At that time, 8 U.S.C. § 1401(g) provided in relevant part that "a person born outside the geographical limits of the United States" acquired U.S. citizenship at birth if they were born:

> of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than five years, at least two of which were after attaining the age of fourteen years . . . .

8 U.S.C. § 1401(g) (codifying § 301(g) of the INA, as amended in 1986). Here, then, the determination of Plaintiff's citizenship requires examination of his lineage and the family members through which he claims he acquired citizenship, beginning with his great-grandmother—Cruz Rodriguez de Guerra, a.k.a. Cruz Rodriguez-Vargas ("Cruz"). Doc. 1 at 6-7.

Cruz's U.S. citizenship is straightforward, as she was born in the United States, in Herrington, Kansas, and, thus, automatically acquired U.S. citizenship at birth on February 28, 1924, under the Fourteenth Amendment to the Constitution. Doc. 1-6 at 11-16; U.S. CONST. amend. XIV, § 1.

Antonio Guerra Rodriguez, a.k.a. Jorge Antonio, Cruz's son and Plaintiff's paternal grandfather ("Rodriguez"), was born outside of the United States to a citizen mother, Cruz, and non-citizen father. At the time of Rodriguez's birth on June 13, 1944, the question of his citizenship was governed by the Nationality Act of 1940 ("1940 Act"). Pub. L. No. 76-853, ch. 876, 54 Stat. 1137, 1138-40 (repealed 1952); Doc. 1-6 at 1, 14-15. The 1940 Act provided that a person born in 1944 obtained U.S. citizenship at birth if they meet the following requirements:

> A person born outside the United States . . . of parents one of whom is a citizen of the United States who, prior to the birth of such person, has had ten years' residence in the United States . . . , at least five of which were after attaining the age of sixteen years, the other being an alien:
> . . .
> [I]n order to retain such citizenship, the child must reside in the United States . . . for a period or periods totaling five years between the ages of thirteen and twenty-one years:
> . . .
> [I]f the child has not taken up a residence in the United States . . . by the time he reaches the age of sixteen years, or if he resides abroad for such a time that it becomes impossible for him to complete the five years' residence in the United States . . . before reaching the age of twenty-one years, his American citizenship shall thereupon cease.

1940 Act, § 201(g) at 1138-39 (cleaned up). However, the 1940 Act also included specific provisions regarding citizenship at birth for individuals born outside the United States *out of wedlock*. *Id.* Specifically, § 205 of the 1940 Act stated that § 201(g) applies:

> as of the date of birth, to a child born out of wedlock, provided the paternity is established during minority, by legitimation, or adjudication of a competent court.
>
> In the absence of such legitimation or adjudication, the child, whether born before or after the effective date of this Act, if the mother had the nationality of the United

States at the time of the child's birth, and had previously resided in the United
States . . . , shall be held to have acquired at birth her nationality status.

*Id.* § 205 at 1138-40.[2]  The Supreme Court clarified that "[t]he scheme permits the transmission

of citizenship to children who have no tie to the United States so long as their mother was a U.S.

citizen *continuously present* in the United States *for one year at any point in her life prior to the*

*child's birth*."  *Sessions v. Morales-Santana*, 582 U.S. 47, 67-68 (2017) (emphasis added).

While Rodriguez states by affidavit that his mother, Cruz, "was born and raised in the

United States[,]" Doc. 1-6 at 1, Plaintiff provides no further proof that Cruz was "continuously

present in the United States for one year at any point in her life prior to [Rodriguez's] birth."

*Morales-Santana*, 582 U.S. at 68 (emphasis in original omitted).  But accepting Plaintiff's claims

regarding Cruz's ties to the United States as true—including that her father served in World War

I and that she was close with her older brothers, also born in the United States, who served in

World War II—it seems likely that Cruz resided in the United States *at least* one continuous year.

Doc. 1 at 9; Doc. 1-6 at 1-2, 24-30.  Assuming, *arguendo*, that Cruz was continuously present for

the required one-year period, then Rodriguez indeed acquired U.S. citizenship at birth.

Even if Rodriguez obtained U.S. citizenship at birth, it is improbable that Plaintiff's

father—Jorge Guerra Vasquez ("Vasquez")—did the same.  Because Vasquez was born in

Mexico on September 13, 1972, the Court again looks to 8 U.S.C. § 1401(g) to determine if

Vasquez obtained U.S. citizenship at birth.  Even assuming Rodriguez was a citizen "prior to the

birth of [Vasquez]," he could not have been physically present in the United States "for a period

or periods *totaling not less than five years*, at least two of which were after attaining the age of

---

[2] There is nothing in the record indicating Rodriguez's parents' marital status at the time of his
birth, and Plaintiff offers no evidence on that fact.  However, because assuming Rodriguez was
born out of wedlock benefits Plaintiff in this analysis, the Court does so *arguendo*.

fourteen years . . . ." 8 U.S.C. § 1401(g) (emphasis added).  By affidavit, Rodriguez claims that he and his father went to live with his uncles in California in the early 1970s.  Doc. 1-6 at 2.  And because Rodriguez began residing in the United States no earlier than 1970, and Vasquez was born in 1972, Rodriguez could not have been physically present in the United States for at least five years before Vasquez was born.[3]  Doc. 1-6 at 2.  Thus, Vasquez did not obtain U.S. citizenship at birth in 1972 even if his father, Rodriguez, had done so in 1944.

Finally, because Vasquez was not a U.S. citizen at the time of Plaintiff's birth in 1993, Plaintiff also did not acquire citizenship at birth under 8 U.S.C. § 1401(g).  Therefore, notwithstanding that Vasquez acquired a Certificate of Citizenship in November 2021, immigration officials correctly determined that the certificate was erroneously granted and issued a Notice of Intent to Cancel the Certificate on December 22, 2021.  Doc. 1 at 8-9; Doc. 1-6 at 41; Doc. 10 at 11-12.  Thus, Defendants' argument that Plaintiff's Certificate of Citizenship was also erroneously granted, even though no Notice of Intent to Cancel has yet been issued, is also correct.  Doc. 10 at 12, nn.3-4; Doc. 1-15.

B.  *All of Plaintiff's Claims Are Precluded.*

Plaintiff asserts claims for (1) Declaration of Plaintiff's U.S. Citizenship (Count I), (2) Writ of Injunction (Count II), (3) FTCA – Negligence (Count III), (4) FTCA – Gross Negligence (Count IV), (5) FTCA – False Arrest (Count V), (6) FTCA – Wrongful Imprisonment (Count VI),[4] (7) Violation Fifth Amendment Substantive Due Process (Count VII), (8) Violation of Fifth Amendment Procedural Due Process (Count VIII), (9) FTCA – Intentional Infliction of

---

[3] Notably, other documentation reveals that Cruz sought to have Rodriguez classified as an "alien relative" of a U.S. citizen in 1981, writing therein that Rodriguez had never been in the United States.  Doc. 1-6 at 32-37.

Emotional Distress (Count IX), and (10) FTCA – Malicious Abuse of Process (Count X). However, Plaintiff's substantive claims directly arise "from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against" him. 8 U.S.C. § 1252(g). And Plaintiff's non-FTCA claims for mandamus, injunctive, and declaratory relief are not standalone claims, but seek relief contingent upon the assertion of a valid substantive cause of action. Plaintiff has not cited any other statute or independent basis that provides jurisdiction over such claims. As such, they too arise from the decision of the Attorney General to pursue Plaintiff's removal. 28 U.S.C. §§ 1361, 1651.

Plaintiff's argument as to Count IV that § 1252(g) "may not serve as a basis to bar an FTCA action for false imprisonment, even where the claimant is not a citizen," lacks merit. Doc. 16 at 7. Plaintiff cites *Najera v. United States* in support. 926 F.3d 140, 144 (5th Cir. 2019). However, the holding in *Najera* does not apply here, as it is easily distinguished. In *Najera*, the Fifth Circuit "conclude[d] that § 1252(g) did not strip the district court of subject matter jurisdiction" where ICE filed the NTA "two days *after* Najera's release from his allegedly false imprisonment." 926 F.3d at 144 (emphasis in original). Unlike in *Najera*, however, ICE arrested Plaintiff on or about June 11, 2021, the same day that the NTA was issued and served on him. *Id.*; Doc. 1 at 19-20; Doc. 1-4 at 1-2.

In sum, while § 1252(g) does not cover "the universe of deportation claims," it does apply to "three discrete events along the road to deportation," *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482-84 (1999), to-wit: "claims arising from all past, pending, or future exclusion, deportation, or removal proceedings." *Alvidres-Reyes v. Reno*, 180 F.3d 199, 204 n.4 (5th Cir. 1999). Indeed, federal courts, including those within the Fifth Circuit, have routinely dismissed claims asserted under the FTCA and alleging constitutional violations,

as well as actions seeking mandamus, injunctive, and declaratory relief, for lack of subject matter jurisdiction pursuant to § 1252(g) where, as here, such claims arise from a decision to commence removal proceedings or execute a removal order. *See, e.g.*, *Foster v. Townsley*, 243 F.3d 210, 214 (5th Cir. 2001) (denying due process claim under § 1252(g) because it arose from INS officer's decision to execute a deportation order); *Alvidres-Reyes*, 180 F.3d at 201, 206 (dismissing for lack of subject matter jurisdiction under § 1252(g) plaintiffs' claims seeking mandamus, declaratory, and injunctive relief connected to the Attorney General's deportation-related decisions); *Silva v. United States*, 866 F.3d 938, 940 (8th Cir. 2017) (holding that FTCA and Fourth and Fifth Amendment claims seeking relief for harms arising from alleged wrongful removal were barred under § 1252(g)); *Artiga Carrero v. Farrelly*, 270 F. Supp. 3d 851, 877 (D. Md. Sept. 20, 2017) (granting defendants' motion to dismiss as to FTCA claim for false arrest and imprisonment under § 1252(g) because it "plainly arises from [d]efendants' decision to execute the order of removal").

## IV. CONCLUSION

For the foregoing reasons, *Defendants' Motion to Dismiss*, Doc. 10, should be **GRANTED**, and Plaintiff's claims should be **DISMISSED WITHOUT PREJUDICE**. And as no claims will remain pending, the Clerk of the Court should be directed to close this case.

**SO RECOMMENDED** on January 29, 2025.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).